PEOPLE v. WALTERS.

1. CRIMINAL LAW—ARREST—COMPLAINT—PRELIMINARY EXAMINATION —TIME.

   A peace officer who has arrested a person without a warrant must take the person arrested, without unnecessary delay, before the most convenient magistrate of the county in which the offense was committed, and must make a complaint before the magistrate, stating the offense for which the person was arrested (CL 1948 § 764.13).

2. SAME—PRELIMINARY EXAMINATION—TIME.

   Every person charged with a felony shall, without unnecessary delay after his arrest, be taken before a magistrate or other judicial officer and, after being informed as to his rights, shall be given an opportunity publicly to make any statement and answer any questions regarding the charge that he may desire to answer (CL 1948, § 764.26).

3. SAME—UNLAWFULLY PROLONGED DETENTION.

   Continued detention of one accused of murder without taking him before a magistrate was unnecessary, and so unlawful, when at the time of the arrest, the officers had both probable cause to make the arrest and sufficient evidence to make a complaint (CL 1948, § 750.316).

---

REFERENCES FOR POINTS IN HEADNOTES

[1,–4] 5 Am Jur 2d, Arrest §§ 76, 77.
[5] 5 Am Jur 2d, Appeal and Error § 548.
[6] 53 Am Jur, Trial §§ 671, 822.

4. SAME—UNLAWFULLY PROLONGED DETENTION.

Defendant's prolonged detention for investigation of murder without arraignment was unreasonable when, from the testimony of the officers who conducted his interrogation during detention, it is apparent that the manifest purpose of the detention and questioning was to obtain incriminating statements from the defendant (CL 1948, § 750.316).

5. APPEAL AND ERROR—CORRECTION OF ERRORS—QUESTIONS REVIEWABLE—SAVING QUESTION FOR REVIEW.

The Court of Appeals may notice and correct grave errors in criminal cases involving the life or liberty of the accused which seriously affect his constitutional rights, although not challenged by objection or motion in the trial court.

6. CRIMINAL LAW—MISTRIAL—FAIR TRIAL.

Testimony by police officer of offer by defendant, charged with murder, as to "copping out" is of such damaging and incriminating nature that instructing the jury to disregard it is insufficient and a mistrial should be declared, as no amount of admonition by the trial court for the jury to ignore the offensive testimony could assure the defendant a fair trial (CL 1948, § 750.316).

Appeal from Recorder's Court; Schemanske (Frank G.), J. Submitted Division 1, March 8, 1967, at Detroit. (Docket No. 1,457.) Decided November 28, 1967.

William Benjamin Walters was convicted of murder in the second degree. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Roland L. Olzark,* for defendants.

LESINSKI, C. J. In 1961 the defendant was convicted of murder in the second degree of his es-

tranged wife, CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549). He appeals.

The record reveals that Mrs. Walters was fatally stabbed on October 27, 1960, at or about 7 p.m. in a lot near the intersection of Mt. Elliott street and Mt. Elliott court in the city of Detroit.

Denise Papcun, daughter of the deceased, testified that she had driven her mother to the vicinity of the Industrial Bar, her mother's place of employment, located at Mt. Elliott and Charles streets, at approximately 6:45 or 6:50 p.m.

A son-in-law of Mrs. Walters, Edward Comeau, testified that he had spoken with the defendant in a restaurant, the Plymouth Lunch, between 5 and 5:30 p.m. on the same day, and that the defendant had indicated that he expected to meet Mrs. Walters at the restaurant that day. This witness also stated that at about 5:32 p.m., he saw the defendant walking south on Mt. Elliott street and that, at that time, Mrs. Walters and Marie Casey were walking about 300 feet behind the defendant.

Another witness, Martin John Ribarski, testified that he saw the defendant at about 6:35 or 6:40 p.m. walking in the direction of the place where the crime was committed.

A white handkerchief and a white righthand glove were found by Officer Debaker, of the Detroit police department, in the lot where the deceased was found. Officer Norman Nickerson, of the Detroit police department, testified he found a white lefthand glove in the restroom of Happy Walter's Bar, which is in the vicinity of the place where the crime was committed. The bartender of Happy Walter's Bar testified that the defendant had come into the bar at about 5:40 p.m. on the day in question, ordered a beer, used the telephone, gone to the men's room, and left about 6:20 p.m. The lot on which the body

of Mrs. Walters was found was one-quarter mile south of the Industrial Bar.

Defendant was arrested in the Industrial Bar at 9:35 p.m. on October 27, 1960, by Detective Merle Harrington. Detective John Ware testified that he talked to the defendant across the street from the Industrial Bar immediately after the arrest and asked him to take several other officers and himself to the defendant's home. When they arrived at the home, the officers asked if they could go in and look around. In response to this request, the defendant sought further explanation and was told by the offi-cers that his wife had met with some sort of acci-dent and that they wanted to look around. The defendant replied "Go ahead, go in."

An officer said he picked up a towel, a washcloth and possibly a rug from the bathroom floor in the course of this search. The next day, October 28, 1960, the apartment was searched again and a pair of shoes and some handkerchiefs were seized. The testimony pertaining to these shoes from an officer assigned to the scientific bureau of the Detroit police department was that they had human blood stains on them, but that it was not possible to determine the blood type.

Shortly after his arrest on October 27, 1960, the defendant was taken to police headquarters, ques-tioned intermittently during the period of detention, and subsequently arraigned on October 31, 1960. The defendant continued to deny his guilt through-out these interrogations, but made certain damaging statements which become relevant in the context of the issues raised on appeal.

Defendant contends that his detention was unlaw-ful and certain statements made by him during in-custody interrogation should not have been used against him. As authority for his position, the de-

fendant calls our attention to *People* v. *Hamilton* (1960), 359 Mich 410, 416. In *Hamilton,* the Court considered the admissibility of statements obtained by police while unlawfully holding a prisoner without prompt arraignment. The Court stated:

"Hamilton's continued detention was unwarranted and so unlawful under these sections. It was unlawful because the delay was *unnecessary,* and unlawful because *its manifest purpose was that of 'sweating' a confession* after the officers were fully enabled to complain and arraign according to the requirements of said section 26." (Emphasis supplied.)

Defendant also relies on the following provisions of the Michigan criminal code:

. · "A peace officer who has arrested a person without a warrant must without unnecessary delay, take the person arrested before the most convenient magistrate of the county in which the offense was committed, and must make before the magistrate a complaint, stating the offense for which the person was arrested." CL 1948, § 764.13 (Stat Ann 1954 Rev § 28.872).[1]

"Every person charged with a felony shall without unnecessary delay after his arrest, be taken before a magistrate or other judicial officer and, after being informed as to his rights, shall be given an opportunity publicly to make any statement and answer any questions regarding the charge that he may desire to answer." CL 1948, § 764.26 (Stat Ann 1954 Rev § 28.885).

This Court must determine whether the rule laid down in the *Hamilton Case, supra,* and the cited provisions of the Michigan criminal code, *supra,* have been violated or whether, as the people contend,

---

[1] See, currently, PA 1927, No 175, ch 4, § 13, as added by PA 1964, No 58 (CL 1948, § 764.13 [Stat Ann 1965 Cum Supp § 28-.871(1)]).

the defendant was merely "booked" to determine the immediate issue of release or complaint.

It is apparent that the delay between the defendant's arrest at 9:35 p.m. October 27, 1960, and his subsequent arraignment on October 31, 1960, was unnecessary. At the time of the defendant's arrest, the officers had both probable cause to make the arrest and sufficient evidence to make a complaint. The defendant was taken not to a magistrate but rather to police headquarters and questioned extensively from 1 a.m. to 5 a.m. on the morning of October 28; again at 8 a.m. the same day, and intermittently throughout that day; in the evening at 5 p.m. and again on October 29, 1960.

Detective Ware's testimony indicates that the manifest purpose of the interrogations outlined above was to obtain a confession. In his testimony Detective Ware stated:

"I asked him if he had killed his wife. He said he had not. I told him he would probably be taken to court charged with first-degree murder, and that the only way the charge could be changed was if he told us about killing his wife, because he would be the only one that knew what happened to her. He stated to me that it wouldn't do him any good to 'cop out' is the words he used, and he was 52 years of age and that he felt that with that age even a manslaughter charge a judge would give him 15 years for this and it would be his entire time anyway, so it wouldn't matter which charge he was taken under. He told me that if we guaranteed him just 6 months, he would 'cop out' to us, in the words he used."

Detective Cooper's testimony revealed that the defendant made admissions as to the ownership of the blood-stained shoes during the interrogation period.

The defendant's prolonged detention without arraignment was unreasonable; and, from the testimony of the officers who conducted the interrogations, it is apparent that the manifest purpose of the detention and questioning was to obtain incriminating statements from the defendant. Both the spirit and the holding of *People* v. *Hamilton, supra,* were violated. The people's argument that the defendant was merely "booked" is unpersuasive and is totally inconsistent with the officers' testimony at trial.

A reading of the testimony as a whole gives ample basis for a determination that the defendant was illegally detained, for the purpose of eliciting a confession, and that his varied admissions, thus obtained, were an integral part of the people's case against him, as established through the testimony of those who had procured said admissions—law-enforcement officers with many years of police and trial experience.

In *People* v. *Limon* (1966), 4 Mich App 440, 445, this Court recognized and applied the principle that in certain criminal cases appellate courts may properly consider grave errors which affect substantial rights of the accused in the absence of an objection below. The specific error alleged and determined here was not raised below. However, it is apparent that the factual situation places this case in the *Limon* classification. It is in this context that we reverse for a new trial, predicated upon the rule enunciated in *People* v. *Hamilton, supra,* and codified into statute.

Although we hold that the defendant's position on this question is in accord with the case and statutory law of Michigan, the case at bar is not resolved by this determination alone. On objection by the defendant, the trial court properly excluded the de-

fendant's statement as to "copping out" and instructed the jury to ignore it. However, the trial court refused to declare a mistrial on this basis. Testimony such as indicated here is of such a damaging and incriminating nature that a mistrial should have been declared. No amount of admonition by the trial court for the jury to ignore the offensive testimony could assure the defendant a fair trial from that point on in the trial. See *People v. Schram* (1965), 1 Mich App 279.

In view of this determination, it is unnecessary to consider the merits of the other issues raised on appeal.

Reversed and remanded for new trial.

T. G. KAVANAGH and LEVIN, JJ., concurred.