## PEOPLE *v.* FERRAZZA

## PEOPLE *v.* WHITNEY

1. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL LAW — SPEEDY TRIAL.

    A state in which there is an untried charge pending against a person who is being held on a criminal charge in another state has a constitutional duty, upon the accused person's demand, to make a diligent, good-faith effort to bring the accused to trial promptly (US Const, Am 6; Const 1963, art 1, § 20).

2. CRIMINAL LAW — CONSTITUTIONAL LAW — DUE PROCESS — SPEEDY TRIAL — EXTRADITION.

    Defendants charged with murder in Michigan were not denied a speedy trial by six-month delay that occurred between the time they were arrested in Illinois and the time extradition proceedings were begun where the record shows that Illinois would not release defendants to Michigan until they were tried on an armed robbery charge in Illinois, that the Illinois trial was postponed twice, and that there were repeated inquiries from the Michigan prosecutor regarding the possibility of bringing defendants to Michigan.

3. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL LAW — SPEEDY TRIAL — STATUTES.

    Statutes implementing the constitutional right to a speedy trial, as well as the constitutional provision itself, requires no more than good faith and prompt action by the prosecution (Const 1963, art 1, § 20; MCLA §§ 767.38, 768.1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law §§ 241, 249, 250,
[4] 5 Am Jur 2d, Appeal and Error § 545,

4. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—APPEAL AND ERROR—
PRESERVING QUESTION.

> The Court of Appeals may consider allegations that evidence
> was improperly admitted at a criminal trial even in the ab-
> sence of an objection on the record at the trial, but such
> an allegation of error will not be considered where the evidence
> of defendants' guilt is overwhelming and the Court of Appeals
> is convinced that defendants would have been convicted even
> if the evidence in question had not been admitted at the trial.

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 2 April 9, 1969, at Lansing. (Docket Nos. 4,419; 4,577.) Decided August 26, 1969. Leave to appeal denied defendant Ferrazza October 24, 1969. See 382 Mich 790. Leave to appeal by defendant Whitney denied April 21, 1970. See 383 Mich 776.

Dante Ferrazza, Jr., and Harry W. Whitney were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Ross & Bruff* (*Kenneth L. Rancilio,* of counsel), for defendant Ferrazza on appeal.

*Soma, Oster, O'Reilly & Hoste,* for defendant Whitney on appeal.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

Levin, J. The defendants were convicted of first degree murder[1] in separate trials in the summer of 1967. They appeal, claiming that they were denied their constitutional and statutory right to a speedy trial.[2]

On the same day in May, 1966, that the first-degree murder warrant for the defendants' arrest was issued, they were arrested in Illinois on an armed robbery charge. They remained in Illinois until January, 1967, when, after having been convicted of armed robbery, they were released by Illinois to Michigan and returned to this State to stand trial.

The United States Supreme Court recently enunciated the standard by which defendants' claim is to be adjudicated. In *Smith* v. *Hooey* (1969), 393 US 813 (89 S Ct 575, 21 L Ed 2d 607, 614), the defendant was, as were the defendants here, detained in one state while facing an untried charge in another state. The court held that, upon the accused person's demand, the state where the untried charge is pending has "a constitutional duty to make a diligent, good-faith effort to bring him" to trial.

Measured by that "diligent, good-faith effort" standard, the defendants were not denied a speedy trial. No claim is made that the prosecutor did not act diligently after formal extradition proceedings were instituted in the fall of 1966.[3] The delays

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

[2] US Const, Am 6; Const 1963, art 1, § 20; MCLA § 768.1 (Stat Ann 1954 Rev § 28.1024); MCLA § 767.38 (Stat Ann 1954 Rev § 28-.978).

[3] After the formal extradition papers were mailed from Macomb county to the governor's office in Lansing on November 3, the assistant prosecutor telephoned Lansing on November 22 in an effort to expedite action. The extradition papers were mailed from Lansing to Illinois on November 22. On December 9 the assistant prosecutor telephoned Illinois to prod the Illinois officials and discovered that the required special agreement between the states had not been included. On December 12 the assistant prosecutor persuaded an Illinois official to send the special agreement. This was then forwarded to Lansing. On December 27 this agreement reached Governor Rom-

which occurred after the return of the defendants to Michigan were attributable to pretrial motions and procedures initiated for the most part by the defendants.[4]

We are persuaded, contrary to the defendants' main contention, that the Michigan authorities acted with sufficient diligence during the period between May, 1966 (when the defendants were first detained in Illinois) and fall, 1966 (when formal extradition proceedings were instituted). The chronology of events during this 6-month period follows:

May 11, 1966—first-degree murder warrant issued at the request of the Macomb county prosecutor. On the same day the defendants were arrested in Evanston, Illinois, on the Illinois armed robbery charge.

May 13—a Macomb county assistant prosecutor interviewed the defendants in Evanston, Illinois, and learned they wished to be returned to Michigan as soon as possible.

May 23—the assistant prosecutor telephoned Illinois officials who informed him that the defendants would be tried for armed robbery in Illinois.

ney and on January 4, 1967, the signed agreement was sent back to Illinois. On January 10, the assistant prosecutor telephoned Illinois and was informed that the papers were being sent to the warden of the prison in which the defendants were incarcerated. On January 13, the assistant prosecutor telephoned the warden. On January 18, the assistant prosecutor was informed that the defendants had waived extradition. They were returned to Michigan on January 21.

[4] The defendants were arraigned on the complaint in Macomb county on January 22, 1967. Counsel were appointed for them on January 23. Preliminary examination was scheduled for February 2. The defendants asked for a 60-day postponement and when the trial judge adjourned the examination for only 2 weeks (until February 14), the defendants brought an action for a writ of superintending control in the circuit court to compel the judge to grant the desired 60-day extension; this motion was denied. On March 10 the defendants were arraigned on the information. On March 27, the defendants moved to adjourn the trial for 60 days; the motion was granted and the trial was set for June 6. On June 5 the defendants moved to dismiss the charges because of the alleged denial of their right to a speedy trial; the motion was denied.

June 6—a letter from Illinois confirmed the May 23 telephone conversation and stated that the defendants would be tried in Illinois on June 23, 1966.

June 23—the assistant prosecutor was informed by telephone that the Illinois trial had been postponed until July.

Early July—the assistant prosecutor learned by telephone that the Illinois trial had again been postponed.

July-September—the assistant prosecutor made no further inquiries.

September 8—the assistant prosecutor received a letter stating that the defendants had pled guilty on September 7, 1966, to the Illinois charge and had been sentenced to serve 2 to 6 years.

September 22—the assistant prosecutor wrote Illinois authorities giving notice of his intention to begin extradition proceedings.

October 10—the assistant prosecutor telephoned the governor's office in Lansing to familiarize himself with extradition procedures.

November 3—the necessary papers were forwarded from Macomb county to the governor's office.

During this 6-month period both defendants made several inquiries by mail concerning the delay in extradition. Defendant Ferrazza filed a petition for a writ of *habeas corpus* with the Macomb county circuit court.[5]

The delay in the extradition of the defendants appears to have been unavoidable. The uniform criminal extradition act, which both Illinois and

---

[5] Our disposition of the case makes it unnecessary to consider or decide whether the defendants' actions were sufficient to comply with the requirement of a formal demand for a speedy trial. See *People* v. *Williams* (1968), 9 Mich App 676, 688; *People* v. *Nawrocki* (1967), 6 Mich App 46, *certiorari denied* 389 US 942 (88 S Ct 304, 19 L Ed 2d 296). Where there has been inordinate delay in bringing an incarcerated accused person to trial, some courts have absolved him of the requirement of filing a demand for a speedy trial. *Pitts* v. *North Carolina* (CA 4, 1968), 395 F2d 182, 187; *United States* v. *Chase* (ND Ill, 1955), 135 F Supp 230; see, also *People* v. *Darrah* (1968), 29 App Div 2d 816 (287 NYS2d 494, 497).

Michigan have adopted,[6] allows a State which has custody of a fugitive on a pending charge to "hold him until he has been tried and discharged or convicted and punished."[7]   Clearly, Illinois had the right to keep the defendants until they were tried in Illinois.

The Macomb county officials early made known their desire to have the defendants returned to Michigan.   Every communication between officials of Illinois and of Macomb county during the summer of 1966 indicated Illinois' intention of detaining the defendants until they had been prosecuted for armed robbery.

The Macomb county officials had every reason to believe that Illinois would not consent to extradition before trying the defendants on the armed robbery charge.   While they might have begun formal extradition proceedings at an earlier date, neither their failure to do so nor the few additional weeks' delay due to the assistant prosecutor's unfamiliarity with extradition procedures alters our impression upon the whole record that the prosecutor acted with reasonable diligence and in good faith, albeit unsuccessfully, in attempting to obtain custody of the defendants in the late spring and summer of 1966.

This case is distinguishable from the cases decided in other jurisdictions which have been brought to our attention.   In most of these cases the record showed total inaction by the prosecution although the defendants had already commenced serving the sentence imposed by the detaining State.   In *Smith* v. *Hooey, supra,* for 6 years the state of Texas made

6 MCLA § 780.1 *et seq.* (Stat Ann 1954 Rev § 28.1285) ; Smith-Hurd Illinois Annotated Statutes, ch 60, §§ 18–49.

7 MCLA § 780.18 (Stat Ann 1954 Rev § 28.1285[18]).   See *Koch* v. *O'Brien* (1957), 101 NH 11 (131 A2d 63) ; *State* v. *Liakas* (1957), 165 Neb 503 (86 NW2d 373, 377).

no effort to bring the accused person to trial other than to send one letter to the detaining authorities. In *Pitts* v. *North Carolina* (CA 4, 1968), 395 F2d 182, the State failed for 15 years to take even the "slightest step" to procure a temporary release and a prompt hearing for the accused person. In *People* v. *Winfrey* (1967), 20 NY2d 138 (281 NYS2d 823, 228 NE2d 808), no effort was made for 4–1/2 years to obtain the accused person's presence in New York; pertinent is the following observation of the New York Court of Appeals (p 142): "there is no contention that if such a request [to a sister state] is made and rejected a delay in bringing the prisoner to trial in New York occasioned by his foreign imprisonment would be unreasonable. The point is that in this case no effort of any kind was made." In *People* v. *Bryarly* (1961), 23 Ill 2d 313 (178 NE2d 326), the prosecution had announced its intention to abandon the case after a co-defendant had been acquitted; for nearly five years there was no effort to initiate extradition proceedings. Similarly, see *United States* v. *Reed* (DC, 1968), 285 F Supp 738. *Cf. State* v. *Johnson* (1967), 13 Ohio Misc 79 (231 NE2d 353).

Our finding that the prosecutor acted with reasonable diligence and in good faith makes it unnecessary for us to decide whether MCLA § 767.38 (Stat Ann 1954 Rev § 28.978), providing for a trial of persons detained in prison within six months, applies to a defendant incarcerated in another state. The Michigan statutes implementing the constitutional right to a speedy trial,[8] as well as the constitutional provision itself, require no more than good faith and prompt action by the prosecution. *Cf. People* v. *Hendershot* (1959), 357 Mich 300, 303; *People* v. *Castelli* (1963), 370 Mich 147, 153; *People*

---

[8] See footnote 2.

v. *Williams* (1968), 9 Mich App 676, 682, 683, 687;
*People* v. *Farmer* (1969), 16 Mich App 148, con-
struing a different statute[9] but on principle relevant
in the application of MCLA § 767.38 as well.

Defendant Whitney has raised an additional issue
concerning the admission into evidence of a black
wallet. The wallet was found on Ferrazza when he
was arrested in Illinois. It contained false identifi-
cation which had been used by the victim. The
defendant now contends that the evidence should
have been excluded as irrelevant and unduly preju-
dicial.

No objection to the admission of the wallet was
made at the trial. We recognize that we may,
nevertheless, consider the objection now made and,
if sufficiently impressed, order a new trial.[10] The
evidence of the defendants' guilt was overwhelming.
We are convinced that Whitney would have been
convicted even if the wallet had not been admitted
in evidence. Accordingly, timely objection not hav-
ing been made, we decline further to consider this
assignment of error.

Affirmed.

All concurred.

---

9 MCLA § 780.131 (Stat Ann 1969 Cum Supp § 28.969[1]).

10 *People* v. *Dorrikas* (1958), 354 Mich 303, 316, 326; *People* v.
*Dickinson* (1966), 2 Mich App 646, 653; *People* v. *Kamischke* (1966),
3 Mich App 236; *People* v. *Besonen* (1966), 4 Mich App 131, 141;
*People* v. *Jordan* (1967), 7 Mich App 28, 32; *People* v. *Walters*
(1967), 8 Mich App 400, 406. *Cf. People* v. *Clarke* (1962), 366 Mich
209, 213, 214.