**Hector Santiago RODRIGUEZ,**
**Putative Petitioner,**

v.

**SUPERINTENDENT, BAY STATE**
**CORRECTIONAL CENTER,**
**Putative Respondent.**

**Misc. No. 97–8068.**

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1998.

Decided March 23, 1998.

James F. McNiff, II, York, ME, for putative petitioner.

Gregory I. Massing, Assistant Attorney General, with whom Scott Harshbarger, Attorney General, Boston, MA, was on brief, for putative respondent.

Before TORRUELLA, Chief Judge, SELYA and STAHL, Circuit Judges.

SELYA, Circuit Judge.

This proceeding involves questions of novel impression. It finds its genesis in an application by Hector Santiago Rodriguez for permission to file a third habeas corpus petition seeking relief from his conviction, nearly three decades ago, for first-degree murder.

Because the putative petitioner (who, for simplicity's sake, we shall refer to as "petitioner," without any qualifying adjective) fails to satisfy the statutory prerequisites for filing a successive petition, we deny his application.

## I. BACKGROUND

On November 30, 1971, a Massachusetts jury convicted Rodriguez[1] of the first-degree murder of William Alonzo Johnson. The trial judge sentenced him to life imprisonment and the Massachusetts Supreme Judicial Court (SJC) affirmed his conviction. *See Commonwealth v. Rodriquez,* 364 Mass. 87, 300 N.E.2d 192 (1973).

In addition to filing various post-conviction motions in the state courts, Rodriguez also filed two unsuccessful habeas petitions in the federal courts. The first, circa 1977, challenged the constitutionality of the trial judge's comments to the jury during deliberations. The second, filed in 1984, asserted that the trial judge's end-of-case jury instructions unconstitutionally relieved the prosecution of its burden to prove beyond a reasonable doubt that Rodriguez had not acted in self-defense.

In 1995, Rodriguez filed another motion for new trial in the Massachusetts courts. This motion took renewed aim at the constitutionality of the jury instructions, this time targeting the trial judge's use of "moral certainty" language in his reasonable doubt instructions. Relying on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), Rodriguez argued that the targeted language abridged his right to due process by permitting the jury to convict him even if the prosecution had not proved its case beyond a reasonable doubt. The state superior court denied Rodriguez's motion and, on November 18, 1996, the SJC refused further appellate review.

During the pendency of these state court proceedings, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214

---

1. The record reflects that (contrary to the more usual Hispanic custom) the petitioner has been called by the last of his given names throughout the long history of his case. We will, therefore bow to nomenclative precedent and refer to him as "Rodriguez."

(1996) (AEDPA). While AEDPA preserves a state prisoner's right to seek federal habeas review of an unconstitutionally obtained conviction, it prohibits a district court from entertaining second or successive habeas petitions without pre-clearance by the appropriate court of appeals. *See* 28 U.S.C. § 2244(b)(3) (Supp.1996). Thus, on October 3, 1997, Rodriguez approached this court and requested authorization to pursue a third habeas petition in the federal district court. The featured claim echoes that pressed before the Massachusetts courts: Rodriguez contends that *Cage*'s condemnation of some moral certainty instructions as violative of due process, 498 U.S. at 41, 111 S.Ct. at 329–30, is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). Realizing that resolution of Rodriguez's application requires this court to interpret certain of AEDPA's provisions for the first time, we requested additional briefing and entertained oral argument.

## II. ANALYSIS

Because Rodriguez filed his application for leave to prosecute a third habeas petition long after AEDPA's effective date, AEDPA governs here. *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). The statute contains a gatekeeping mechanism that screens second or successive habeas petitions before they reach the district court. *See Felker v. Turpin,* 518 U.S. 651, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996). This mechanism closes the doors of the district court to a prisoner who wishes to file a second or successive petition unless and until he obtains advance clearance from the appropriate court of appeals. *See* 28 U.S.C. § 2244(b)(3). AEDPA instructs that a potential repeat petitioner must make a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), to this court either that his "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," *id.* § 2244(b)(2)(A), or that his claim rests on material, newly discovered facts, *see id.* § 2244(b)(2)(B). Absent such a showing,

Rodriguez cannot prosecute his third habeas petition.

### A. *The 30–Day Limit.*

■ Before turning to the merits, we iron out a wrinkle created by the AEDPA amendments to habeas corpus procedure. In pertinent part, those amendments direct that the "court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion." 28 U.S.C. § 2244(b)(3)(D). Rodriguez filed his application on October 3, 1997, and thus section 2244(b)(3)(D) directs us to rule no later than November 2, 1997. Because we obviously have missed that deadline, we must evaluate the effect, if any, of this failure on Rodriguez's aspirations.

■ The Sixth Circuit recently pondered this issue and held that section 2244(b)(3)(D) "is hortatory or advisory rather than mandatory." *In re Siggers,* 132 F.3d 333, 336 (6th Cir.1997). We agree. Before operating as a mandate, a statutory time limitation addressed to a public official generally must contain both an express command that the official act within a given temporal period and a consequence attached to noncompliance. *See id.; see also St. Regis Mohawk Tribe v. Brock,* 769 F.2d 37, 41 (2d Cir.1985); *Usery v. Whitin Mach. Works, Inc.,* 554 F.2d 498, 501 (1st Cir.1977). Although section 2244(b)(3)(D) invokes the vocabulary of obligation—it states that a court of appeals "shall" grant or deny a request to file a second or successive petition within 30 days—it specifies no consequence for the court's failure to honor this obligation. Moreover, there is nothing in the nature of the power to which the temporal limitation appertains, or in the manner of its conferment, that would justify an inference that Congress intended the specified period of time to operate as a limitation on judicial authority. Hence, we construe the statute as precatory, not mandatory. While section 2244(b)(3)(D) directs the courts of appeals to work within a specified time frame—a charge consonant with AEDPA's broader attempts

to streamline the habeas process—it operates as a guideline, not as an imperative.

Let us be perfectly clear. When presented with an application for leave to file a second or successive petition, we will, of course, make a diligent, good-faith effort to comply with the 30–day time limit. We anticipate little difficulty doing so in the ordinary mine-run of cases. Yet, certain applications will present issues that are sufficiently complex or novel to demand more time. In some instances, additional documents must be gathered; in others, supplemental briefing and/or oral argument will be desirable. If circumstances counsel against issuing a ruling within 30 days, we must retain the flexibility to bring the appropriate quantum of attention to bear. *See In re Siggers,* 132 F.3d at 336 (noting that interpreting section 2244(b)(3)(D) as advisory alleviates separation of powers and due process concerns); *see also Galtieri v. United States,* 128 F.3d 33, 36–37 (2d Cir.1997).

This is an exceptional case. AEDPA's successive petition provisions are relatively new and Rodriguez's application raises important questions about them. It was thus impracticable to comply with AEDPA's 30–day time limit. Notwithstanding this necessary delay, we retain jurisdiction to rule on Rodriguez's application.

### B. *The Merits.*

■ AEDPA does not amplify the standard by which a court of appeals is to gauge the "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that a prospective repeat petitioner must make. The Seventh Circuit recently articulated its understanding of this requirement:

> By "prima facie showing" we understand [it to be] simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.... If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the application.

*Bennett v. United States,* 119 F.3d 468, 469–70 (7th Cir.1997); *see also Woratzeck v.*

*Stewart,* 118 F.3d 648, 650 (9th Cir.1997). We adopt this interpretation, but emphasize that despite its superficially lenient language, the standard erects a high hurdle. This is as it should be: in formulating the AEDPA amendments, Congress intended "to curb the abuse of the statutory writ of habeas corpus," H.R. Conf. Rep. No. 104–518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 944, and, accordingly, heightened the already formidable barriers to second or successive habeas petitions.

We next size the petitioner's case against this template. In the post-AEDPA era, a state prisoner who seeks pre-clearance for filing a second or successive petition has two avenues open to him. Because Rodriguez does not press any fact-based claim, we focus on section 2244(b)(2)(A) to the exclusion of section 2244(b)(2)(B).

■ At Rodriguez's trial in 1971, the jury instructions on reasonable doubt included several statements that likened proof beyond a reasonable doubt to proof to a moral certainty. In *Cage,* the Supreme Court explained that some moral certainty instructions "allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." 498 U.S. at 41, 111 S.Ct. at 330; *compare Victor v. Nebraska,* 511 U.S. 1, 21–22, 114 S.Ct. 1239, 1250–51, 127 L.Ed.2d 583 (1994) (holding that reference to "moral certainty" in a reasonable doubt instruction does not violate due process as long as the charge, taken as a whole, reasonably conveys the proper "beyond a reasonable doubt" standard). Rodriguez asserts that *Cage* announced a new rule of constitutional law, that at the time of his last habeas petition (1984) the *Cage* rule was unavailable to him, and that the Supreme Court has made the rule retroactive to cases on collateral review.

We need not tarry on the first tine of Rodriguez's three-pronged claim. A string of federal appellate decisions have held that *Cage* announced a new rule of constitutional law, *see, e.g., Adams v. Aiken,* 41 F.3d 175, 178–79 (4th Cir.1994) (*Adams III* ); *Nutter v. White,* 39 F.3d 1154, 1157–58 (11th Cir. 1994); *Skelton v. Whitley,* 950 F.2d 1037,

1043–44 (5th Cir.1992), and we see no principled basis for sundering this unbroken strand.

Nor do we need to linger on the "previously unavailable" prong. The time frame of the applicant's previous habeas petition provides the coign of vantage from which we assess whether a rule of constitutional law was "previously unavailable." *See In re Medina,* 109 F.3d 1556, 1566 (11th Cir.1997). Rodriguez filed his last habeas petition some six years prior to the Court's opinion in *Cage.* Despite this temporal separation, the Commonwealth maintains that a *Cage* claim (or its functional equivalent) was available to Rodriguez at an earlier date because this court had addressed constitutional challenges to moral certainty instructions prior to 1984. *See, e.g., United States v. Drake,* 673 F.2d 15 (1st Cir.1982); *Bumpus v. Gunter,* 635 F.2d 907 (1st Cir. 1980); *United States v. DeVincent,* 632 F.2d 147 (1st Cir.1980); *United States v. Indorato,* 628 F.2d 711 (1st Cir.1980). This is thin gruel, served cold; it overlooks that we uniformly rejected these challenges prior to *Cage*'s debut. *See Drake,* 673 F.2d at 21; *Bumpus,* 635 F.2d at 912; *DeVincent,* 632 F.2d at 153; *Indorato,* 628 F.2d at 720–21. Consequently, Rodriguez has made a prima facie showing that, in 1984, a moral certainty claim was not available to him in any meaningful sense. *See Reed v. Ross,* 468 U.S. 1, 17, 104 S.Ct. 2901, 2910–11, 82 L.Ed.2d 1 (1984) (explaining that when a Supreme Court decision marks a "clear break from the past," the rule embodied therein "will almost certainly have been" previously unavailable in the requisite sense).

The remaining question is whether *Cage*'s rule has been "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2244(b)(2)(A). History furnishes valuable perspective. In pre-AEDPA days, a petitioner could obtain relief only if he demonstrated a violation of a rule of constitutional law established at the time his conviction became final. *See Teague v. Lane,* 489 U.S. 288, 308–10, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989). The case law allowed for two classes of exceptions to this general approach. If a new rule "place[d] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *id.* at 311, 109 S.Ct. at 1075, or if it established a "watershed" principle of criminal procedure that implicates the fundamental fairness and accuracy of the criminal proceeding, *id.* at 311–12, 109 S.Ct. at 1075–76, then a petitioner could obtain the rule's benefit retroactively on collateral review.

Inferior federal courts played a significant, though circumscribed, role in deciding the applicability *vel non* of these isthmian exceptions. In the absence of a direct statement by the Supreme Court, the lower federal courts were free to determine, in the first instance, whether a particular rule of constitutional law merited retroactive application, and thus to determine whether (and if so, to what extent) a habeas petitioner might take refuge in a new rule of constitutional law. *See Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 952–53, 127 L.Ed.2d 236 (1994). Under a conventional pre-AEDPA *Teague* analysis, several federal courts of appeals found that *Cage* fit within *Teague*'s second exception and therefore applied retroactively to cases on collateral review. *See Adams III,* 41 F.3d at 178–79; *Nutter,* 39 F.3d at 1157–58. *But see Humphrey v. Cain,* 120 F.3d 526, 528–30 (5th Cir.) (suggesting that *Cage* claims fall within *Teague*'s second exception, but ruling that a prior panel decision precluded retroactive application), *reh'g en banc granted,* 120 F.3d 534 (5th Cir.1997).

Rodriguez suggests that AEDPA merely memorializes *Teague*'s approach to retroactivity. Were that so, opinions such as *Adams III* and *Nutter* would possess considerable force. But, Rodriguez's premise is wrong: AEDPA does not codify *Teague.* To the contrary, its plain language instructs that only new rules rendered retroactive on collateral review "by the Supreme Court" may inure to the benefit of habeas petitioners.

■ AEDPA contains no overt limitation on the types of new rules that the Supreme Court may declare retroactive on collateral review, but it invests the Court with the sole authority to make such declarations. Insofar as second or successive petitions are concerned, the statute's precedent-limiting provision, fairly read, eliminates the lower

federal courts' role in deeming new rules of constitutional law a permissible basis for habeas relief. *See In re Vial,* 115 F.3d 1192, 1196–97 (4th Cir.1997) (en banc); *In re Hill,* 113 F.3d 181, 184 (11th Cir.1997) (per curiam); *cf. Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996) (noting that under the AEDPA amendments to 28 U.S.C. § 2254(d)(1), "[f]ederal courts are no longer permitted to apply their own jurisprudence, but must look exclusively to Supreme Court case law"). Consequently, an application to file a second or successive habeas petition must point to a Supreme Court decision that either expressly declares the collateral availability of the rule (such as by holding or stating that the particular rule upon which the petitioner seeks to rely is retroactively available on collateral review) or applies the rule in a collateral proceeding. *See In re Vial,* 115 F.3d at 1197; *In re Hill,* 113 F.3d at 184; *see also* H.R. Conf. Rep. No. 104–518, at 111.

Rodriguez's fallback position on the question of retroactivity hinges on his assertion that the Court's dispositions in either of two cases—*Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972) (per curiam), or *Adams v. Evatt,* 511 U.S. 1001, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994) (*Adams II* )—meet AEDPA's requirement and confirm *Cage's* retrospective availability on collateral review. Neither case is persuasive on this point.

*Ivan V.* is a direct lineal descendant of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Winship* held that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1072–73. In *Ivan V.,* the Supreme Court imbued this holding with "complete retroactive effect." 407 U.S. at 205, 92 S.Ct. at 1952. Rodriguez reasons that a *Cage* error is a species of *Winship* error, and that *Ivan V.* accordingly

supplies the requisite statement of retroactivity. Rodriguez's argument is puzzling since, taken at face value, it suggests that *Cage* did not announce a new rule of constitutional law at all, but, rather, amounted to no more than a specific application of *Winship.* If that is so, then Rodriguez stumbles at the starting gate, for section 2244(b)(2)(A) requires that a person who seeks leave to prosecute a second or successive habeas petition predicate his claim on a *new* rule of constitutional law.

In all events, Rodriguez's position is unavailing. *Ivan V.* is utterly silent on *Cage's* retroactivity—an entirely unsurprising circumstance given that *Ivan V.* predates *Cage* by some eighteen years—and we do not discern in the text of *Ivan V.* any intention on the part of the Supreme Court to declare a blanket rule of retroactivity for every conceivable application or extension of *Winship.*

The second authority upon which the petitioner relies—the Supreme Court's summary reconsideration order in *Adams II*—derives from the Fourth Circuit's opinion in *Adams v. Aiken,* 965 F.2d 1306 (4th Cir.1992) (*Adams I* ), in which the court of appeals held that *Cage* did not apply retroactively for *Teague* purposes. *Adams I* presented the Justices with a matchless opportunity to determine *Cage's* availability on collateral review, but they did not reach the retroactivity issue. Rather, the Court granted certiorari, vacated the judgment, and remanded matter for reconsideration in light of *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).[2] *See Adams II,* 511 U.S. at 1001, 114 S.Ct. at 1365. The Fourth Circuit then ruled that *Cage* fell within one of the *Teague* exceptions, and declared *Cage* retroactively applicable on collateral review for *Teague* purposes. *See Adams III,* 41 F.3d at 178–79.

Despite the fact that the Supreme Court itself did not make any statement about *Cage's* retroactivity in *Adams II,* Rod-

---

**2.** *Sullivan* held that a constitutionally deficient reasonable doubt instruction is not subject to harmless error analysis. 508 U.S. at 280–82, 113 S.Ct. at 2082–83. In the course of its opinion, the Court described the right to a jury verdict of guilt beyond a reasonable doubt as ."a

'basic protectio[n]' ... without which a criminal trial cannot reliably serve its function," and one that "unquestionably qualifies as 'structural error.' " *Id.* at 281–82, 113 S.Ct. at 2083 (citations omitted).

riguez posits that the Court's vacation and remand were tantamount to a reversal of the Fourth Circuit, and that *Adams II* thereby operates as a *de facto* declaration that *Cage* applies retroactively. The short, dispositive answer to this asseveration is that a summary reconsideration order does "not amount to a final determination on the merits." *Henry v. City of Rock Hill,* 376 U.S. 776, 777, 84 S.Ct. 1042, 1043, 12 L.Ed.2d 79 (1964). Such an order merely directs the lower court to reexamine the case against the backdrop of some recent, intervening precedent; it does not compel a different result. *See id.; see also* Robert L. Stern et al., *Supreme Court Practice* 279–80 (6th ed.1986). We are unwilling to read into *Adams II* any more portentous meaning.

We recognize that the Ninth Circuit, on similar facts, has held that *Adams II* is enough to support a prima facie case of *Cage* retroactivity. *See Nevius v. Sumner,* 105 F.3d 453, 462 (9th Cir.1996). Yet the *Nevius* panel did not discuss the essential nature of summary reconsideration orders, and the result reached in *Nevius* appears to run at cross purposes not only with the Court's contrary instruction, *see Henry,* 376 U.S. at 777, 84 S.Ct. at 1043, but also with section 2244(b)(2)(A)'s clear command that those who would prosecute second or successive habeas petitions must affirmatively show that they seek the benefit of a rule made retroactive "by the Supreme Court." For these reasons, we respectfully decline to follow *Nevius.*

## III. CONCLUSION

We need go no further.[3] AEDPA sets tough standards that severely restrict state prisoners' abilities to file second or successive habeas petitions. Although at this stage an applicant need only make a prima facie showing that a claim comports with section 2244(b)(2)(A), that provision's prerequisites are nonetheless stringent. Rodriguez adequately demonstrates that his claim of *Cage* error rests on a new rule of constitutional law that was unavailable when he last filed a habeas petition, but he is unable to identify a Supreme Court edict that renders *Cage* ret-

roactively applicable to cases on collateral review. In the end, that shortcoming defeats his application.

*The application for permission to file a third habeas corpus petition is denied.*

---

**3.** It is unnecessary for us to determine whether the jury instructions given at the petitioner's trial in fact amounted to a *Cage* violation, and we intimate no view on that subject.