Dante **FERRAZZA,** Petitioner,

v.

Arthur **TESSMER,** Respondent.

No. Civ. 97–CV–40233–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 17, 1999.

Dante Ferrazza, Kincheloe, MI, pro se.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner, Dante Ferrazza ("petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed pro se, petitioner challenges his conviction and sentence on one count of first degree murder, M.C.L. 750.316; M.S.A. 28.548. For the reasons stated below, petitioner's application for writ of habeas corpus is denied.

### I. Background

Petitioner was convicted on June 15, 1967 of first degree murder in the Macomb County Circuit Court. On July 16, 1967, Judge Frank E. Jeanette sentenced petitioner to life imprisonment without parole.

On April 11, 1966, Gary Clark Grayvold, a former associate of petitioner's, was seen leaving the Pampa Lanes Bowling Alley in Washington Township, Michigan with petitioner and Harry "The Horse" Whitney. On May 6, 1966, Grayvold's body was discovered by fishermen floating near a dam in the Stoney Creek Metropark. Grayvold had been strangled to death, weighted with cement blocks, and thrown into the lake. Subsequent investigation by police determined

that Gravyold had been lured to the Pampa Lanes Bowling Alley by petitioner to help get rid of some "hot money".

Petitioner and Harry Whitney were arrested on May 11, 1966 in Evanston, Illinois, where they had been arrested for committing an armed robbery. At the time of his arrest by the police in Evanston, Illinois, petitioner had a wallet in his possession containing false identification that had been used by the victim.

Petitioner and co-defendant were eventually extradited to Michigan. On June 15, 1967, petitioner was found guilty in the Macomb County Circuit Court of first degree murder. On July 16, 1967, Judge Frank E. Jeanette sentenced petitioner to life imprisonment without parole.

Petitioner appealed to the Michigan Court of Appeals, which affirmed the judgment and conviction.[1] The Michigan Supreme Court denied leave to appeal on October 24, 1969.[2] Petitioner subsequently filed three different delayed motions for new trials with the Macomb County Circuit Court between 1975 and 1981, all of which were denied. None of these motions raised the issue currently being raised in this petition for writ of habeas corpus.

Petitioner then sought the issuance of a writ of habeas corpus from this Court. Petitioner claimed that the trial court had deprived him of due process by failing to instruct the jury on lesser included offenses to the charged offense of first degree murder. Although the district court granted the petition, the Sixth Circuit Court of Appeals reversed the district court and reinstated petitioner's state conviction.[3]

In 1995, petitioner brought a motion for relief from judgment in the Macomb County Circuit Court, challenging the reasonable doubt instruction given to the jury by the trial court judge. The circuit court judge denied the motion for relief from judgment on July 21, 1995.[4] The Michigan Court of

1. *People v. Ferrazza,* 18 Mich.App. 680, 171 N.W.2d 658 (1969).

2. *People v. Ferrazza,* 382 Mich. 790 (1969).

3. *Ferrazza v. Mintzes,* 735 F.2d 967 (6th Cir. 1984).

4. *People v. Ferrazza,* Case # C–67–212, Opinion and Order.

Appeals denied petitioner's application for leave to appeal on May 17, 1996, stating that petitioner had failed to meet the burden of establishing that he was entitled to relief from judgment under MCR 6.508(D).[5] The Michigan Supreme Court denied leave to appeal on January 31, 1997.[6]

On May 8, 1997, the United States Court of Appeals for the Sixth Circuit granted petitioner's motion to allow him to file a second or successive petition for writ of habeas corpus under 28 USCS § 2244(b)(3)(A).[7]

Petitioner has now filed this second petition for writ of habeas corpus and seeks relief on the following ground:

I. WAS THE DEFINITION OF REASONABLE DOUBT GIVEN BY THE TRIAL COURT TO THE JURY CONSTITUTIONALLY DEFICIENT, WHERE IT EQUATED REASONABLE DOUBT WITH MORAL CERTAINTY AND ALSO DEFINED REASONABLE DOUBT AS A FAIR OR HONEST DOUBT?

For the reasons stated below, the petition for writ of habeas corpus is denied.

## II. Standard of Review

Review of a state court's decision under 28 U.S.C. § 2254 is governed by the standards established by the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 26, 1996). The Act altered the standard of review that a federal court must use for writs of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The first question that a federal court must ask is whether the state court's resolution of any legal questions underlying its decision on the claim was contrary to clearly established federal law. *Drinkard v. Johnson,* 97 F.3d 751 (5th Cir.1996); *cert den.* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). The "unreasonable application" standard of review must mean more than that a federal court may grant habeas relief based upon its simple disagreement with the state court's decision. The use of the word 'unreasonable' in this restrictive standard of review implies that federal courts must "respect all reasonable decisions of state courts." *Drinkard, supra* at 768.

■ A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. *West v. Seabold,* 73 F.3d 81, 83 (6th Cir.1996); *cert den.* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996). 28 USC 2254(e)(1).

■ To implement this new standard of review, the United States Court of Appeals for the Sixth Circuit chose to follow an approach employed by the United States Court of Appeals for the First Circuit in *Martin v. Bissonette,* No. 96–1856, 1997 WL 280602, *9 (1st Cir. May 29, 1997), withdrawn and new opinion issued, 118 F.3d 871 (1997). *Harpster v. Ohio,* 128 F.3d 322, 326–27 (6th Cir. 1997).[8] First, the reviewing court should

---

5. Michigan Court of Appeals, Docket # 189759.

6. Michigan Supreme Court, Docket # 106465.

7. *Ferrazza v. Tessmer,* USCA No. 97–117.

8. It should be noted that the First Circuit withdrew its initial opinion because the Supreme Court subsequently held that the AEDPA was not

to be applied retroactively. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2067–68, 138 L.Ed.2d 481 (1997). The petition in *Martin* had been filed prior to the effective date of the AEDPA and therefore was not subject to its provisions. Despite the fact that the First Circuit withdrew its analysis of the applicable standard of review under the AEDPA, the Sixth Circuit has

determine whether the Supreme Court has established a precedent which clearly compels an outcome for the issue at hand. Then, if no such Supreme Court precedent exists, the court should determine whether the state court decision involved an unreasonable application of federal law as established by the Supreme Court. *Harpster*, 128 F.3d at 327.[9]

Under the standard outlined in *Harpster*, the initial question is whether a Supreme Court precedent determines the outcome for the issues raised in the petition for writ of habeas corpus. If there is no Supreme Court precedent controlling those issues, then this Court must determine whether the state court decision on those issues constituted an unreasonable application of federal law as established by the Supreme Court.

### III. Discussion

#### A. *Instructions Given at Trial:*

At petitioner's jury trial in state court, the judge gave the following instructions to the jury to define the meaning of reasonable doubt:

In determining the question of guilt or innocence the jury is bound to exclude entirely from their consideration of every fact and circumstance alleged or sought to be proved by the prosecution which is not proved to the moral certainty or a reasonable doubt.

\*   \*   \*   \*   \*   \*

Now what do we mean by reasonable doubt? The word means just exactly what they say, a reasonable doubt is a doubt based upon reason. It's a fair doubt. It does not mean every conceivable kind of doubt or doubt that may be purely imaginary or fanciful, speculative, it means an honest doubt that appeals to your reason and is founded upon reason. A reasonable

doubt is that kind of doubt. And this is, in my opinion, the best definition of reasonable doubt that we have. A reasonable doubt is that kind of doubt that would cause a person to hesitate to act in any of the important affairs of his own life. It is a doubt arising from the evidence or the lack of evidence after consideration of all the evidence. It's not a vague imaginary, speculative something, it's not a mere shadow, which doubt amounting to a mere possibility of innocence, it must be substantial to start with and it must grow out of some facts connected with this case and the testimony whereby your mind is unsettled and it must be fairly and honestly entertained by you. So keep this rule of reasonable doubt in your mind. After consideration of all the evidence you have no reasonable doubt you return a verdict of guilty as charged. If you do have a reasonable doubt in any respect throughout this case in any of the elements, which I will cover in detail, you must give the benefit of the doubt to the defendant and return a verdict of not guilty.

\*   \*   \*   \*   \*   \*

Now, on reasonable doubt again, I have two definitions, two instructions that I would submit to you. No mere weight of evidence will warrant a conviction unless it's so strong and satisfactory as to remove from your mind all reasonable doubt of the guilt of the accused as you investigate this case along the lines of evidence, you are to say whether you find that kind of doubt in the proofs which causes you to hesitate and halt in your deliberation. If the train of circumstances stops and you are unable to (sic) fair, calm, unprejudiced discussion to get to that stopping place, then there is such a reasonable doubt growing out of the

---

elected to follow the reasoning of that withdrawn decision.

**9.** The court compared this approach to that of the Courts of Appeals for the Fifth and Seventh Circuits as outlined in *Drinkard v. Johnson*, 97 F.3d 751, 767–68 (5th Cir.1996) and *Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under that approach, the reviewing court first determines whether the issue at hand is one of law, fact, or a mixed

question of law and fact. If the issue is one of fact, § 2254(d)(2) applies. If one of law, the "contrary to" language of § 2254(d)(1) applies, and if one of mixed law and fact, the "unreasonable application" language of § 2254(d)(1) applies. Although the Court of Appeals for the Sixth Circuit chose to adopt the First Circuit approach, the court noted that the two approaches would likely lead to the same result. *Harpster*, 128 F.3d at 327.

evidence in the case that you cannot get over or get by, and you should say then that the respondent should have the benefit of that reasonable doubt and be acquitted by your verdict. In that connection you should bear in mind that it is essential that every element of the offense charged must be proven beyond a reasonable doubt. A reasonable doubt is a fair doubt growing out of the testimony in the case. It's not a mere imaginary capricious or possible doubt but a fair doubt based on reason and common sense. It is such a doubt as to leave your mind, after careful consideration of all the evidence in the case, in that connection, that you cannot say that you have an abiding conviction to a moral certainty of the thrust of the charges that were made against the respondent. And if after you have considered the testimony in this case and viewed it in connection with the surrounding circumstances you can say in your mind you do not have a reasonable doubt as to whether or not the defendant is guilty, then it is your duty to convict. On the other hand, if such doubt exists it is your duty as honest intelligent conscientious jurors to acquit him. He is entitled to the benefit of that doubt.

Petitioner contends that this definition of reasonable doubt was deficient because it equated reasonable doubt with "moral certainty", and defined reasonable doubt as a fair or honest doubt.

■ B. *Procedural Default:* Petitioner did not raise this issue on direct appeal or in his first petition for writ of habeas corpus with the federal court. Instead, petitioner waited until 1995, when he raised this issue in a motion for relief from judgment with the Macomb County Circuit Court. The Macomb County Circuit Court denied petitioner's motion pursuant to MCR 6.508(D) [10], ruling that petitioner had failed to show good cause for failing to raise the issue of the allegedly deficient reasonable doubt instruc-

tion earlier. The state trial court ruled that although the holding in *Cage v. Louisiana, infra,* had not been given retroactive application by the Sixth Circuit Court of Appeals, Michigan cases since 1982 had indicated that a reasonable doubt instruction cannot shift the burden of proof. The state court ruled that petitioner could have raised a claim regarding this jury instruction at least since 1982, but because, he failed to show cause for not doing so earlier, he would not be entitled to relief from judgment under MCR 6.508(D). [11] Respondent contends that petitioner should be procedurally defaulted from bringing this claim in a federal habeas petition, in light of the clear reliance by the state court on this ground for denial of the motion for relief from judgment.

Respondent's contention cannot be accepted by this Court in light of the decision by the Sixth Circuit Court of Appeals in *Rogers v. Howes,* 144 F.3d 990 (6th Cir.1998). The Sixth Circuit noted that Rogers had been convicted in 1965 and the Michigan Court Rules governing post-conviction relief were not enacted until 1989. Prior to the enactment of these rules, Michigan permitted delayed appeals, but the Sixth Circuit rejected that state's argument that a prior rule which allowed delayed appeals (by requiring a showing by affidavit of merit in the appeal and a further showing that the delay was not due to appellant's culpable negligence) established a procedural bar similar to that contained in the rules enacted in 1989. Rather, Michigan courts prior to 1989 retained the inherent power to grant even a long-delayed motion for a new trial regardless of whether a defendant might be urging a ground that could have been put forward at an earlier point in time. *Rogers v. Howes, supra* at 993–994. Because MCR 6.508(D) was enacted in 1989, which was subsequent to Rogers' conviction in state court, it was not a firmly established and regularly followed procedural rule at the time of the petitioner's conviction. The Court of Appeals ruled that MCR

---

**10.** MCR 6.508(D), which was enacted in 1989, states that where a defendant brings a motion for relief from judgment on grounds that could have been raised on direct appeal or in a prior motion for relief from judgment, the defendant must show cause for his or her failure to raise that

issue earlier and actual prejudice from the irregularity complained of.

**11.** *People v. Ferrazza,* C–67–212, Opinion and Order, dated July 21, 1995, pp. 3–6.

6.508(D) was not an adequate and independent state procedural rule barring a federal review of the petitioner's claims. *Rogers v. Howes, supra.*

Because MCR 6.508(D) was not a regularly followed procedural rule at the time of petitioner's 1967 conviction, this Court rules that petitioner is not barred from bringing this claim in federal court even though he failed to raise this issue on his direct state appeal. *Rogers v. Howes, supra.*

C. *Retroactivity:* Respondent also contends that this Court is without power to hear petitioner's second habeas petition because the claim raised does not involve a new constitutional rule which has been made retroactive by the Supreme Court to cases on collateral review. 28 USCS § 2244(b)(2) states that a claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless:

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 USCS § 2244(b)(3)(A) states that before a second or successive petition for writ of habeas corpus can be filed in the district court, the applicant shall move in the appropriate circuit court of appeals for an order authorizing the district court to consider the application.

■ Under the Antiterrorism and Effective Death Penalty Act (AEDPA) Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), a district court does not have jurisdiction to entertain a successive postconviction motion or petition for writ of habeas corpus in the absence of an order from the court of appeals authorizing the filing of such successive motion or petition. *Nelson v. U.S.,* 115 F.3d 136 (2nd Cir.1997); *Hill v. Hopper,* 112 F.3d 1088 (11th Cir.1997); *cert den.* 520 U.S. 1203, 117 S.Ct. 1571, 137 L.Ed.2d 714 (1997). Unless the court of appeals has given approval for the filing of a second or successive petition, a district court in the Sixth Circuit must transfer the petition to the Sixth Circuit Court of Appeals no matter how meritorious the district court believes the petitioner's claim to be. *In Re Sims,* 111 F.3d 45, 47 (6th Cir.1997). Under section 2244(b)(3)(A), only a circuit court of appeals has the power to authorize the filing of a successive petition for writ of habeas corpus. *Nunez v. U.S.,* 96 F.3d 990 (7th Cir.1996).

Respondent contends that in spite of the Sixth Circuit's order allowing petitioner to file this second petition for writ of habeas corpus, this Court should not entertain the second petition because the Supreme Court did not make their holding in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) retroactive to cases on collateral review.

Several pre-AEDPA cases held that the new rule announced in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), could be applied retroactively to habeas petitions. *Nevius v. Sumner,* 105 F.3d 453 (9th Cir.1996); *Nutter v. White,* 39 F.3d 1154 (11th Cir.1994); *Adams v. Aiken,* 41 F.3d 175 (4th Cir.1994). These circuit courts held that an improper reasonable doubt instruction undermined the fundamental fairness of the trial in which it was used and would therefore fall within one of the exceptions to the nonretroactivity rule enunciated by the United States Supreme Court in *Teague v. Lane, infra. Nutter v. White, supra* at 1158; *Adams v. Aiken, supra* at 179. In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the U.S. Supreme Court held that a new rule of law could not be applied to cases on collateral review where the conviction was final prior to the announcement of the new rule. The two exceptions to the holding were:

1. retroactivity of new rules that would place certain kinds of primary, private individual conduct beyond the power of the

criminal law-making authority to proscribe, and;

2. retroactive application would be allowed for new rules that involve procedures that are implicit in the concept of ordered liberty.

*Teague v. Lane, supra* at 307, 109 S.Ct. 1060.

However, several cases decided subsequent to the passage of the AEDPA have refused to retroactively apply the holding in *Cage v. Louisiana, supra* on collateral review to state criminal convictions that became final prior to the effective date of *Cage.* In *Rodriguez v. Superintendent, Bay State Correctional Center,* 139 F.3d 270 (1st Cir.1998), the First Circuit Court of Appeals held that a state prisoner was not entitled to file a second petition for habeas relief challenging a reasonable doubt jury instruction pursuant to *Cage v. Louisiana, supra,* where that new rule of law was unavailable at the time of the prisoner's last petition and had not been made retroactive to cases on habeas review. Although acknowledging the cases that had held that the holding in *Cage* could be applied retroactively to habeas petitions, the First Circuit noted that these cases had been decided prior to the passage of the AEDPA and were based upon the holding in *Teague v. Lane, supra.* The First Circuit noted that the new provisions of 28 USCS § 2244(b)(2) were more restrictive than the holding in *Teague* in terms of the retroactive application of new rules of law to habeas petitions. Under Section 2244, a second or subsequent habeas petition which asserts a claim which relies on a new rule of case law that was previously unavailable must point to a Supreme Court decision that either expressly declares the collateral availability of the new rule or applied the new rule in a habeas proceeding. *Rodriguez v. Superintendent, Bay State Correctional Center, supra* at 274. Because the Supreme Court had done neither with respect to its holding in *Cage v. Louisiana, supra,* the First Circuit Court of Appeals held that this was not a new rule of law that would permit petitioner to file a second habeas petition.

The First Circuit Court of Appeals based its decision on a number of appellate court decisions which held that with respect to the filing of a second or subsequent habeas petition, 28 USCS § 2244(b)(2) eliminates the lower federal court's role in determining new rules of constitutional law as a permissible basis for habeas relief. *In Re Vial,* 115 F.3d 1192, 1196–1197 (4th Cir.1997). *Rodriguez v. Superintendent, Bay State Correctional Center, supra* at 274–275. As the Seventh Circuit indicated, under the AEDPA, federal courts are no longer permitted to apply their own jurisprudence under Section 2244(b)(2), but must look exclusively to Supreme Court law to determine whether a new rule of law exists that would permit a habeas petitioner to file a second or successive petition. *Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir. 1996). According to the First Circuit, the AEDPA does not limit the Supreme Court on which rules that they may declare retroactive to cases on collateral review, but it "invests the [Supreme] Court with the *sole authority* to make such declarations". *Rodriguez v. Superintendent, Bay State Correctional Center, supra* at 274. (emphasis added).

Other circuit courts have also held that the new rule of law announced in *Cage v. Louisiana, supra* could not be applied retroactively to cases on collateral review where the conviction had become final prior to the date of the U.S. Supreme Court's decision in that case. In *In Re Hill,* 113 F.3d 181, 184 (11th Cir.1997), the Eleventh Circuit Court of Appeals ruled that a habeas petitioner seeking to file a second habeas petition had failed to demonstrate that the U.S. Supreme Court had made the *Cage* rule retroactive to cases on collateral review. Although acknowledging that the Eleventh Circuit had previously ruled that the holding in *Cage* could be applied retroactively to habeas petitions, the Court noted that its prior decision in *Nutter v. White, supra* had been based upon a *Teague* analysis but that more is required under 28 USCS § 2244 to permit a retroactive application of a new rule to collateral proceedings. *In Re Hill, supra* at 184. The Fifth Circuit has also reached the same decision on the nonretroactivity of the *Cage* rule to collateral proceedings where the state conviction was final prior to the effective date of that ruling. *In Re Smith,* 142 F.3d 832 (5th Cir.1998).

This Court would agree with this line of reasoning that under the terms of the AEDPA, the new rule announced by the Supreme Court could only be given retroactive effect by a Supreme Court decision and therefore, could not be a new rule of law supporting a second or subsequent habeas petition where they have failed to apply the *Cage* ruling retroactively to cases on collateral review. Moreover, this Court agrees with respondent that the Sixth Circuit Court of Appeals' order, allowing petitioner to proceed with this second petition, was merely a determination by the Sixth Circuit that petitioner had made a prima facie showing that the application satisfied the requirements of 28 USCS § 2244. *See* 28 USCS § 2244(b)(3)(C). This Court must still make a determination, after receiving the responsive pleadings and reviewing the applicable law, whether petitioner has demonstrated that he is entitled to relief under Section 2244. Because petitioner has not demonstrated that the United States Supreme Court made the ruling in *Cage v. Louisiana, supra,* retroactive to cases on collateral review where the conviction occurred prior to the effective date of the *Cage* decision, he is not entitled to habeas relief based upon a reasonable doubt instruction which violates the holding in *Cage v. Louisiana, supra. In Re Hill, supra; In Re Smith, supra; Rodriguez v. Superintendent, Bay State Correctional Center, supra.*

D. *Merits of Petitioner's Claim:* This Court concludes, moreover, that petitioner has failed to show that the jury instructions given by the trial court were deficient or lowered the standard of proof required under the Fourteenth Amendment for a criminal conviction. The Fourteenth Amendment Due Process Clause and the Sixth Amendment right to jury trials require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged beyond a reasonable doubt. *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The reasonable doubt standard plays a vital role in the American scheme of criminal procedure; among other things, it is the prime instrument for re-ducing the risk of convictions resting on factual error. *In Re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A constitutionally deficient reasonable doubt instruction is a structural error requiring the reversal of a criminal conviction because it necessarily renders a criminal conviction fundamentally unfair. Such deficient reasonable doubt instructions are therefore not subject to a harmless error analysis. *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). *See also Rickman v. Dutton,* 864 F.Supp. 686 (M.D.Tenn.1994); *affirmed* 131 F.3d 1150 (6th Cir.1997).

Jury instructions must be read, however, in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable doubt concept to the jury. *United States v. Desimone,* 119 F.3d 217, 227 (2nd Cir.1997); *reh denied* 140 F.3d 457 (2nd Cir.1998); *United States v. Birbal,* 62 F.3d 456, 462 (2nd Cir.1995). The proper inquiry for a reviewing court is not whether the jury instruction could have been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The Due Process Clause of the Fourteenth Amendment neither prohibits trial courts from defining reasonable doubt nor does it require them to do so as a matter of course, so long as the trial court instructs the jury on the necessity that the defendant's guilt must be proven beyond a reasonable doubt. *Victor v. Nebraska, supra.*

Petitioner claims that the reasonable doubt instruction given at his state trial violated due process and denied him a fair trial because the judge used the term moral certainty interchangeably with the term reasonable doubt and also defined the term reasonable doubt as being a fair or honest doubt. Petitioner alleges that this reasonable doubt instruction would lead the jury to convict him on lesser evidence than that required by the U.S. Constitution. In reviewing the jury instructions in their entirety, however, this Court concludes that the instructions proper-

ly conveyed the reasonable doubt concept to the jury.

In *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the U.S. Supreme Court held that a reasonable doubt instruction which equated reasonable doubt with "grave uncertainty" and "actual substantial doubt", and which further stated that what was required to convict was "moral certainty" that the defendant was guilty, could have been interpreted by a reasonable juror as allowing a finding of guilt based upon a degree of proof below that required by the Due Process Clause. In reversing the conviction, the Supreme Court found that terms like substantial and grave, as commonly understood, would suggest a higher degree of doubt than that required for acquittal under the reasonable doubt standard and when combined with the reference to moral certainty, a reasonable juror could have interpreted the instruction as allowing a finding of guilt based upon a degree of guilt below that required by the Due Process Clause. *Cage v. Louisiana, supra* at 41, 111 S.Ct. 328.

The Supreme Court, however, appeared to limit its holding in *Cage* in *Victor v. Nebraska, supra,* a case involving two consolidated appeals from California and Nebraska. In *Victor,* the Supreme Court held that the use of the term "moral certainty" in the California jury instruction defining reasonable doubt did not violate due process. When considered in the context that it was used, the phrase merely impressed upon the jury the need to reach a subjective state of near certitude of guilt, and there was no reasonable likelihood that the jury would have understood the phrase to be disassociated from the evidence in that case. *Victor v. Nebraska, supra* at 5, 114 S.Ct. 1239. The Supreme Court also found that use of the term "moral certainty" in the Nebraska jury instruction on reasonable doubt did not violate due process because the jurors were further instructed that they had to have an abiding conviction as to the defendant's guilt, that the instruction equated doubt sufficient to preclude moral certainty with doubt that would cause a reasonable person to hesitate to act, and that the jurors were instructed

that they should be governed solely by the evidence introduced before them, and should not indulge in speculation, conjectures, or inferences not supported by the evidence. *Victor v. Nebraska, supra* at 21–22, 114 S.Ct. 1239. The Supreme Court distinguished these jury instructions from the instruction found to be unconstitutional in *Cage v. Louisiana, supra,* noting that in the *Cage* case, the instruction merely told the jury that they had to be morally certain of the defendant's guilt without any additional explanations which would give meaning to the phrase "moral certainty". *Victor v. Nebraska, supra* at 16, 114 S.Ct. 1239.

Other cases have held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair. In *Austin v. Bell,* 126 F.3d 843 (6th Cir.1997); *cert den* — U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998), the Sixth Circuit Court of Appeals ruled that a reasonable doubt instruction which stated that moral certainty was required to convict the defendant on a criminal charge did not impermissibly lower the burden of proof, where the instruction's additional statement that reasonable doubt was engendered by "an inability to let the mind rest easily" after all of the proof in the case lent content to the phrase "moral certainty" and the phrase did not create a reasonable likelihood that the jury impermissibly applied the jury instruction. The Court went on to conclude that the phrase "moral certainty" is constitutionally permissible in a reasonable doubt instruction where the rest of the instruction lends content to the phrase and indicates the government's proper burden of proof. *Austin v. Bell, supra* at 847. *See also Rickman v. Dutton, supra.*

◼ This Court concludes that use of the term "moral certainty" in these jury instructions did not impermissibly lower the burden of proof because the rest of the jury instruction lent content to the phrase and indicated the government's burden of proof. *Austin v. Bell, supra.* Use of the term "moral certainty" here did not violate due process because the jury was also informed that they had to have an abiding conviction as to petitioner's guilt. *Victor v. Nebraska, supra.* The trial

court also defined reasonable doubt as being the kind of doubt that "would cause a person to hesitate to act in any of the important affairs of his life." This definition gave clear meaning to the concept of reasonable doubt. This Court would distinguish petitioner's case from the one in *Cage v. Louisiana, supra,* where the judge equated reasonable doubt with moral certainty without any further explanation of the terms to give them meaning. Here, the trial court gave a lengthy reasonable doubt instruction which adequately explained the concept of reasonable doubt, particularly where the jury was told repeatedly not to engage in any speculation but to only consider the evidence before them.

Petitioner also contends that the trial court's instruction was deficient because the court used the term "substantial doubt" in the instructions. In *Victor v. Nebraska, supra,* the Supreme Court ruled that a Nebraska jury instruction equating "substantial doubt" with reasonable doubt did not violate due process considering the context in which the term was used. The Supreme Court noted that this term was used to distinguish actual and substantial doubt from a doubt rising from mere possibility, from bare imagination, or from fanciful conjecture, and the instructions contained an alternative definition of reasonable doubt as doubt that causes a reasonable person to hesitate to act.

Similarly, in *Beverly v. Walker,* 118 F.3d 900 (2nd Cir.1997); *cert den* —— U.S. ——, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997), the Second Circuit Court of Appeals held that a jury instruction on reasonable doubt did not unconstitutionally lower the state's burden of proof to the extent that the jury was directed that reasonable doubt must be based entirely and absolutely upon some good sound substantial reason. The Second Circuit also ruled that the reasonable doubt instruction did not unconstitutionally lower the state's burden of proof to the extent that the jury was advised that the prosecutor's burden was to establish defendant's guilt to a reasonable degree of certainty, where the trial court otherwise made it abundantly clear that the governing standard was one of reasonable doubt, and the challenged language was used

to illuminate that the prosecutor was not required to prove defendant's guilt beyond all possible imaginary doubt or to a mathematical certainty.

This Court likewise concludes that the use of the term "substantial doubt" by the court was used in the context of explaining that the doubt had to be based on more than a "vague imaginary, speculative something". A fanciful doubt is not a reasonable doubt. *Victor v. Nebraska, supra* at 7, 114 S.Ct. 1239. Where the trial court used this term only to convey to the jury that their doubt could not be imaginary or fanciful, this Court concludes that it did not impermissibly lower the burden of proof in violation of the due process clause, particularly where the trial court alternatively described a reasonable doubt as the type of doubt that would cause a person to hesitate to act upon an important affair in his life. *Victor v. Nebraska, supra.*

Petitioner also claims that the trial court erred by comparing reasonable doubt to a fair or honest doubt. In *United States v. Campbell,* 874 F.2d 838 (1st Cir.1989), the First Circuit Court of Appeals held that a trial court instruction which continually equated reasonable doubt with a "fair doubt" did not amount to plain error where the trial court's instructions, taken as a whole, detailed the appropriate standard of proof to the jury by describing the presumption of innocence and the heavy burden of proof that was placed on the government and by noting that guilt had to be proven beyond a reasonable doubt. Similarly, the Seventh Circuit Court of Appeals has also ruled that an instruction equating a reasonable doubt to "fair doubt" is not the same as equating reasonable doubt to substantial doubt, and although the phrase "fair doubt" is unhelpful, it does not impinge upon the reasonable doubt standard and its use is not necessarily error. *United States v. Hall,* 854 F.2d 1036 (7th Cir.1988). The Court in *Hall* went on to hold that use of the term "fair doubt" in defining reasonable doubt was not reversible error where the court also informed the jury that the defendant was entitled to the presumption of innocence and that the burden of proving guilt beyond a reasonable doubt was with the government.

This Court has had prior occasion to review a similar reasonable doubt instruction on habeas review. In *Grant v. Rivers*, 920 F.Supp. 769 (E.D.Mich.1996), the petitioner claimed that a jury instruction equated reasonable doubt with a "fair, honest doubt". While feeling that defining reasonable doubt in such a manner may not have helped the jury, this Court ruled that this definition did not impinge upon the reasonable doubt requirement. This Court held that equating reasonable doubt with some other measure of doubt did not constitute a constitutional infringement because the jury instructions also contained language that:

1. the defendant was presumed innocent;
2. the burden of proof never shifts from the prosecutor to the defendant;
3. the defendant was not obliged to come forward with any evidence; and
4. a failure by the government to prove guilt beyond a reasonable doubt *must* result in an acquittal. (emphasis added).

*Grant v. Rivers*, *supra* at 785.

■ In the present case, petitioner does not claim that the trial court did not advise the jury of the presumption of innocence. More importantly, the trial court twice instructed the jury that if they had a reasonable doubt as to petitioner's guilt, it was mandatory that they acquit him. A jury instruction that states that if the government fails to sustain its burden of proof, the jury *must* find the defendant not guilty is not optional. Such an instruction expresses the principle of the presumption of innocence and the requirement that this presumption *mandates* a judgment of acquittal unless the government proves guilt beyond a reasonable doubt. *United States v. Birbal*, 62 F.3d 456 (2nd Cir.1995) (emphasis added). In this case, the Second Circuit Court of Appeals found an instruction on reasonable doubt to be reversible error when the jury was instructed that if the government failed to prove guilt beyond a reasonable doubt, the jury *may* find him not guilty. *United States v. Birbal*, *supra* at 462 (emphasis added). Here, the jury was told by the state court on two occasions that if they had a reasonable doubt, they had to find petitioner not guilty. This Court concludes that this part of the instruction, as much as the rest of the instruction, properly conveyed the reasonable doubt concept to the jury. *Grant v. Rivers*, *supra*.

This Court concludes that the jury instructions in their entirety properly conveyed the concept of reasonable doubt to the jury. The instructions as a whole do not suggest a lower standard of proof than that required by the Due Process Clause of the Fourteenth Amendment. There is no reasonable likelihood from these instructions that the jury applied them in an unconstitutional manner. *Victor v. Nebraska*, *supra*. Accordingly, petitioner's claim for relief must fail.

### IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

### JUDGMENT

The above entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable Paul V. Gadola, a United States District Judge, presiding, and in accordance with the Memorandum Opinion and Order entered on Feb. 16, 1999.

IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus be, and the same hereby is, DENIED.