[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10011
_____

IN RE: ANTHONY JOHNSON,

Petitioner.


_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)
_____

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

We vacate our order in this case dated January 20, 2016, and replace it with this order. Anthony Johnson has filed a pro se application for authorization to file a second or successive 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence. We can authorize such a filing only if we certify that the second or successive motion is based on either:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  It is Mr. Johnson's duty to "make[] a prima facie showing that the application satisfies the requirements of this subsection."   28 U.S.C. § 2244(b)(3)(C).

Mr. Johnson's application relies in part on Johnson v. United States, __ U.S. __, 135 S. Ct. 2551 (2015).  The Supreme Court recently granted certiorari in Welch v. United States, No. 15-6418, 2016 WL 90594 (U.S. Jan. 8, 2016), to decide "[w]hether Johnson v. United States, 135 S. Ct. 2551 (2015), announced a new substantive rule of constitutional law that applies retroactively to cases that are on collateral review."  Pet. for Writ of Cert. at i, Welch v. United States, No. 15-6418, 2015 WL 9666637 (U.S. Sept. 2, 2015).

We recognize that it will likely take the Supreme Court longer than 30 days from now to decide Welch.  This means that we may not rule on Mr. Johnson's application within the 30-day timeframe specified by 28 U.S.C. § 2244(b)(3)(D) ("The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.").  This Court has never decided if this 30-day timeframe is mandatory in all

2

circumstances.  All seven of the Courts of Appeals that have decided this question in a published opinion have said it is not.[1]  We agree with those courts.

## I.

We do not read the language of § 2244(b)(3)(D) to make the 30-day timeframe mandatory no matter the circumstances of any individual case.  It's true that the statute says a court "shall grant or deny" applications like Mr. Johnson's "not later than 30 days" after filing.  But compliance with this timeline may not be just in those rare cases when extraordinary circumstances arise.

In Gutierrez de Martinez v. Lamango, the Supreme Court recognized that, "[t]hough 'shall' generally means 'must,' legal writers sometimes use . . . 'shall' to

---

[1] See Rodriguez v. Bay State Corr. Ctr., 139 F.3d 270, 272 (1st Cir. 1998); Word v. Lord, 648 F.3d 129, 129 n.1 (2d Cir. 2011) (per curiam) ("[W]here an issue requires a published opinion that cannot reasonably be prepared in [] time [] we may exceed the thirty-day time limit." (quotation omitted)); In re Vial, 115 F.3d 1192, 1194 n.3 (4th Cir. 1997) (en banc) (noting that "the importance of the issue presented justified" exceeding "the 30–day time limitation established by 28 U.S.C.A. § 2244(b)(3)(D)"); In re Siggers, 132 F.3d 333, 334–35 (6th Cir. 1997) ("[F]ailure to comply with the thirty-day provision does not deprive this Court of the power to grant or deny a motion under § 2244(b)(3)(A)," "[b]ecause the provision is hortatory or advisory rather than mandatory."); Gray-Bey v. United States, 201 F.3d 866, 867 (7th Cir. 2000) ("We agree with our sister circuits . . . that the 30–day period may be extended for those few cases which require reasoned adjudication and cannot be resolved within the statutory period."); Ezell v. United States, 778 F.3d 762, 765 (9th Cir. 2015) ("We agree with the majority of our sister circuits and hold that when a § 2255(h) motion presents a complex issue, we may exceed § 2244(b)(3)(D)'s thirty-day time limit."); Browning v. United States, 241 F.3d 1262, 1263 (10th Cir. 2001) ("[W]e agree with other circuits that the time limit in section 2244(b)(3)(D) is hortatory or advisory rather than mandatory." (quotation omitted)).

The Third, Eighth, and D.C. Circuits do not appear to have ruled on this question.  And though the Fifth Circuit has said it is "statutorily required" to rule within 30 days, In re White, 602 F. App'x 954, 956 (5th Cir. 2015) (unpublished), it does not appear to have published a precedential opinion addressing the question.

3

mean 'should,' 'will,' or even 'may.'" 515 U.S. 417, 432 n.9 (1995). The Court cited as examples in which "shall" indicates a preference but does not mean "must" Federal Rule of Civil Procedure 16(e) ("The order following a final pretrial conference shall be modified only to prevent manifest injustice.") and Federal Rule of Criminal Procedure 11(b) (A nolo contendere plea "shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administrative of justice"). *Id.* For the reasons set forth below, we hold that "shall" in § 2244(b)(3)(D) indicates a preference for a decision within 30 days but does not mean "must" in all circumstances.

Our predecessor court has explained in binding precedent that "[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." Fort Worth Nat. Corp. v. Fed. Sav. & Loan Ins. Corp., 469 F.2d 47, 58 (5th Cir. 1972)[2] (emphasis added). At least two of our sister circuits have applied this rule to § 2244(b)(3)(D)'s directive to the judiciary. See Rodriguez v. Superintendent, Bay State Corr. Ctr., 139 F.3d 270, 272 (1st Cir. 1998); Siggers, 132 F.3d at 336; see also id. ("The Supreme Court has recognized this rule without expressly adopting it (citing Brock v. Pierce Cty., 476 U.S. 253,

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding all decisions of the Fifth Circuit handed down before October 1, 1981.

4

259-62 (1986)). Indeed, the principle is especially compelling when Congress imposes a statutory timeframe upon the judiciary. See Gray-Bey, 201 F.3d at 868 (noting that interpreting the 30-day timeframe as hortatory rather than mandatory "reflects a reconciliation between the commands of legislation and the exigencies of judicial decisionmaking that is well grounded in the law").

"It is also well recognized that 'Congress sometimes legislates by innuendo, making declarations of policy and indicating a preference while requiring measures that, though falling short of legislating its goals, serve as a nudge in the preferred directions.'" Siggers, 132 F.3d at 336 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 19 (1981)). "Congress knows the difference between encouraging and mandating specific conduct, and knows how to impose binding obligations on courts when it wishes to do so." Id. at 336. Without a consequence, Congress's use of "shall" does not definitively tell us that we must under all circumstances rule within the 30 day timeframe.

Here, "shall" is of course a more compelling directive than "may": it reflects Congress's strong preference for the swift disposition of successor applications. But the term "shall" does not foreclose all exceptions. The Seventh Circuit offered the following analogy in Gray-Bey:

> [I]n the Regional Rail Reorganization Act Cases and Dames & Moore
> v. Regan, the [Supreme] Court saved the constitutionality of statutes

5

(the International Emergency Economic Powers Act . . . in Dames & Moore and the Regional Rail Reorganization Act [in the Regional Rail Reorganization Act Cases]) against takings challenges by noting that Congress had not taken the independent step of repealing the Tucker Act.[3]  The Court felt free to do so even though the laws in question made no mention of the Tucker Act.  Just so here:  Congress imposed the 30-day time limit in § 2244(b)(3), but it did not repeal the All Writs Act, 28 U.S.C. § 1651; Congress thus recognized that courts retain the power to take extraordinary steps when they are needed.

201 F.3d at 869 (internal quotation marks omitted).  We agree that Congress's directive in § 2244(b)(3)(D) coexists with the All Writs Act's grant of power to "issue all writs necessary or appropriate in aid of [our] jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

Relatedly, the timeframe set forth in § 2244(b)(3)(D) implicates a court's power to hold proceedings in abeyance, and "[a]n appellate court's power to hold an order in abeyance . . . has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' All Writs Act, 28 U.S.C. § 1651(a)."  Nken v. Holder, 556 U.S. 418, 426–27, 129 S.

---

[3] The Tucker Act, in place at the time the Regional Rail Reorganization Act Cases were decided, provided in pertinent part:

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or fore liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491 (amended).

6

Ct. 1749, 1756–57 (2009). "A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review. The choice for a reviewing court should not be between justice on the fly or participation in what may be an 'idle ceremony.'" Id. at 427, 129 S. Ct. 1257.

Our conclusion finds further support in "the fact that equitable principles have traditionally governed the substantive law of habeas corpus." Holland v. Florida, 560 U.S. 631, 646, 130 S. Ct. 2549, 2560 (2010) (quotation omitted). That being the case, "we will not construe a statute to displace courts' traditional equitable authority absent the clearest command." Id. (quotation omitted); see also Schlup v. Delo, 513 U.S. 298, 319, 115 S. Ct. 851, 863 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); Jones v. Cunningham, 371 U.S. 236, 243, 83 S. Ct. 373, 377 (1963) ("[Habeas corpus] never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.").

Although the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established certain procedural limits on the scope of habeas review (including the gatekeeping provision at issue in this case), it did so "without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law." Holland, 560 U.S. at 649, 130 S. Ct. at 2562; see also

7

Slack v. McDaniel, 529 U.S. 473, 483, 120 S. Ct. 1595, 1603 ("AEDPA's present provisions [] incorporate earlier habeas corpus principles."). The Supreme Court has told us that AEDPA's "purposes, and the practical effects of our holdings, should be considered when interpreting AEDPA. This is particularly so when petitioners 'run the risk' under the proposed interpretation of 'forever losing their opportunity for any federal review.'" Panetti v. Quarterman, 551 U.S. 930, 945–46, 127 S. Ct. 2842, 2854 (2007) (quoting Rhines v. Weber, 544 U.S. 269, 275, 125 S. Ct. 1528, 1533 (2005)).

There is another reason to join the view of the other Courts of Appeals on this question: "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." Clark v. Martinez, 543 U.S. 371, 380–81, 125 S. Ct. 716, 724 (2005). Here, interpreting § 2244(b)(3)(D) as precluding absolutely a Court of Appeals from holding a second or successive application in abeyance raises substantial constitutional questions. Specifically, that interpretation may interfere with the judiciary's ability to grant effective habeas relief, implicating both the Due Process Clause and the Suspension Clause.

8

"[W]e resist[] an interpretation of the statute that would produce troublesome results, create procedural anomalies, and close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent." Panetti, 551 U.S. at 946, 127 S. Ct. at 2854 (quotation omitted). We are thus convinced that, under appropriate circumstances, we have jurisdiction to grant or deny authorization to file a second or successive petition beyond 30 days.[4]

The question therefore is, what circumstances are appropriate? We agree with our sister circuits that the category of cases where we may exercise our discretion to grant or deny authorization after more than 30 days is small. See Gray-Bey, 201 F.3d at 868. Indeed, this category includes only cases that raise an issue that may be characterized as "extraordinary." Id.

We think this case is extraordinary because of the convergence of four unusual circumstances. First, unlike in cases where the Supreme Court has granted certiorari on only the substantive issue, here the Supreme Court has already

---

[4] The exact mechanism used to ensure time for proper consideration of a case can vary. In Triestman v. United States, 124 F.3d 361 (2d Cir. 1997), the Second Circuit dealt with the 30-day timeframe "by denying the motion within thirty days" and "then stay[ing] [the] mandate and order[ing] briefing on the question of whether or not it was appropriate to reconsider that decision." Id. at 367. Of course, whether a court proceeds through the steps taken in Triestman or the more straightforward one of simply holding a case in abeyance beyond the time limit, the outcome is the same. Although we see no problem with the Triestman approach, we also don't believe that the statute requires it.

decided the substantive issue in Mr. Johnson's favor—namely, that prior convictions may not qualify as ACCA predicates under the residual clause. The only remaining question is whether that substantive rule should be retroactively applied. This circumstance, where the Supreme Court has already determined the substantive law in the petitioner's favor and all that remains to be considered is retroactivity, arises infrequently.[5]

Second, the government has argued that the Johnson rule is retroactive, even though doing so favors petitioners' positions. While we are certainly not required

---

[5] Our research has revealed only nine such cases since AEDPA went into effect 20 years ago: Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718 (2016) (holding that the rule announced in Miller v. Alabama, 567 U.S. __, 132 S. Ct. 2455 (2012), applies retroactively on collateral review); Chaidez v. United States, 133 S. Ct. 1103 (2013) (holding that the rule announced in Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473 (2010), doesn't apply retroactively on collateral review); Whorton v. Bockting, 549 U.S. 406, 409, 127 S. Ct. 1173 (2007) (holding that the rule announced in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), applies retroactively on collateral review); Schriro v. Summerlin, 542 U.S. 348, 349, 124 S. Ct. 2519 (2004) (holding that the rule announced in Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002), doesn't apply retroactively on collateral review); Beard v. Banks, 542 U.S. 406, 408, 124 S. Ct. 2504 (2004) (holding that the rule announced in Mills v. Maryland, 486 U.S. 367, 108 S. Ct. 1860 (1988), doesn't apply retroactively on collateral review); Tyler v. Cain, 533 U.S. 656, 121 S. Ct. 2478 (2001) (holding that the rule announced in Cage v. Louisiana, 498 U.S. 39, 111 S. Ct. 328 (1990) (per curiam), doesn't apply retroactively on collateral review); Bousley v. United States, 523 U.S. 614, 118 S. Ct. 1604 (1998) (holding that the rule announced in Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501 (1995), applies retroactively on collateral review); O'Dell v. Netherland, 521 U.S. 151, 117 S. Ct. 1969 (1997) (holding that the rule announced in Simmons v. South Carolina, 512 U.S. 154, 114 S. Ct. 2187 (1994), doesn't apply retroactively on collateral review); Lambrix v. Singletary, 520 U.S. 518, 117 S. Ct. 1517 (1997) (holding that the rule announced in Espinosa v. Florida, 505 U.S. 1079, 112 S. Ct. 2926 (1992) (per curiam), doesn't apply retroactively on collateral review).

10

to adopt the government's position, the fact that the government has taken this position—particularly in light of the Supreme Court's grant of certiorari on the issue[6]—enhances the extraordinary nature of the circumstances here.

Third, because applications for second or successive petitions based on Johnson arguably must be filed before June 26, 2016 (we do not decide that question now), if the Supreme Court concludes in Welch that Johnson is retroactive, failing to hold the applications in abeyance could deprive petitioners of the benefit of Johnson's retroactivity and render a determination of retroactivity meaningless, as a practical matter.

And finally, the issue Mr. Johnson raises implicates significant concerns of judicial economy. The Supreme Court has recognized that our traditional equitable authority includes the power to make adjustments "that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 500, 61 S. Ct. 643, 645 (1941). If we deny applications for second or successive petitions based

---

[6] The Sixth and Seventh Circuits have held that the Supreme Court already made Johnson retroactive for cases on collateral review. See In re Watkins, 810 F.3d 375 (6th Cir. 2015); Price v. United States, 795 F.3d 731 (7th Cir. 2015). And the First, Second, Eighth, and Ninth Circuits have authorized second or successive petitions based on the theory that Johnson is retroactively applicable in these cases, without deciding the question. See Pakala v. United States, 804 F.3d 139 (1st Cir. 2015); Rivera v. United States, No. 13-4654 (2d Cir. Oct. 5, 2015) (ECF No. 44); Woods v. United States, 805 F.3d 1152 (8th Cir. 2015); United States v. Striet, No. 15-72506 (9th Cir. Aug. 25, 2015) (ECF No. 2). But see In re Williams, 806 F.3d 322 (5th Cir. 2105); In re Gieswein, 802 F.3d 1143 (10th Cir. 2015).

on Johnson, and Welch is decided before the one year from Johnson runs, we will face numerous refiled applications on this same issue again, all of which we will have to consider anew and address individually. If, on the other hand, we hold these applications in abeyance and Welch holds Johnson to be retroactive, we can quickly and easily, in a single order, grant all of the applications held in abeyance. And even if Welch holds Johnson not to be retroactive, we can dispose of the applications just as easily. So holding the applications in abeyance now significantly promotes judicial economy.

The convergence of all four of these circumstances is extraordinary and merits spending additional time to arrive at a better-informed decision.

## II.

Our ruling today follows how we have long treated § 2244(b). This isn't the first time we have recognized that the § 2244(b)(3)(D) timeframe can be exceeded when proper handling of a case requires more than 30 days. In the past, we have scheduled briefing and oral argument beyond the 30-day timeframe. See In re Davis, 565 F.3d 810 (11th Cir. 2009) (per curiam). Mr. Davis filed an application to file a second or successive habeas petition on October 22, 2008. See CMS Docket, In re Davis, No. 08-16009. The panel ordered briefing, entered a conditional stay, allowed the filing of amicus briefs, and heard oral argument. Id.

12

The panel then denied the application six months after the original application had been filed.  Id.  We expect that Mr. Johnson's application will take less time than that.  All we need to know to rule here is whether the Supreme Court has made Johnson retroactive to cases on collateral review.  This is a yes-or-no question, and Welch is unlikely to leave any doubt about the answer.

Our Court has also recognized our power to sua sponte order rehearing of an application to file a second or successive § 2255 motion.  See In re Lambrix, 776 F.3d 789, 794 (11th Cir. 2015) (per curiam).  Rehearing under these circumstances is likely to extend the resolution of an application well beyond the 30-day timeframe.  Also, rehearing could implicate the same question raised in another pending application, especially when the retroactivity of a recent Supreme Court case is at stake.  When this circumstance arises, it makes no sense to treat the timeframe as mandatory for one application but not another.  That would result in two applications which are identical on the merits having opposite outcomes based on the date each application was filed.  And the same would be true when a Court of Appeals certifies to the Supreme Court a question that would decide an application to file a second or successive motion.  See Felker v. Turpin, 518 U.S. 651, 667, 116 S. Ct. 2333, 2341–42 (1996) (Souter, J., concurring).  In these cases, the unique procedural posture of an application might make it impractical to

13

properly decide an issue in 30 days. In the same way, it makes no sense here to dispose of Mr. Johnson's case when the Supreme Court is about to answer the very question he has raised.

## III.

We are aware of this Court's recent suggestion that "this Court necessarily must apply § 2244(b)(2) under a tight time limit in all cases, since the statute expressly requires us to resolve this application within 30 days, no matter the case." In re Henry, 757 F.3d 1151, 1157 n.9 (11th Cir. 2014). Anything Henry said about § 2244(b)(3)(D) is dicta because it was not necessary to decide the issues then before the Court. See United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("As our cases frequently have observed, dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us." (quotation omitted)).

Mr. Henry was a death row inmate who filed a request for stay of execution just four days before his scheduled execution, along with an emergency application for leave to file a second or successive federal habeas petition under 28 U.S.C. § 2244(b). Henry, 757 F.3d at 1152–53. Mr. Henry expressly requested "expedited consideration of" his application to file a second or successive motion based on the then-recent decision in Hall v. Florida, ___ U.S. ___, 134 S. Ct. 1986

14

(2014). He emphasized that his application would be "moot if not ruled on" before his scheduled execution. Notably, Mr. Henry's application did not ask for full briefing or oral argument. Rather, he requested a prompt ruling and an "order authorizing the United States District Court for the Middle District of Florida to consider a second or successive petition for writ of habeas corpus raising a claim of intellectual disability under Atkins v. Virginia," as well as a stay of execution pending the outcome of the second or successive habeas proceedings in the District Court.

Three days after Mr. Henry filed his emergency application, our Court denied it "for two independent reasons: first, the rule enunciated in Hall v. Florida ha[d] not been made retroactive by the United States Supreme Court; moreover, even if it had been, [Mr. Henry] ha[d] not shown a reasonable likelihood that he would benefit from the rule in Hall." 757 F.3d at 1153. This Court also denied Mr. Henry a stay because he had not established any likelihood of success on the merits. Id. at 1163. Given that the Court denied Mr. Henry's emergency motion on the merits three days after it was filed, that Mr. Henry had requested expedited consideration, and that the 30-day timeframe was not at issue in the case, it is safe to say that anything Henry said about the 30-day timeframe was dicta, not holding. See Kaley, 579 F. 3d at 1253 n.10.

15

IV.

For all of these reasons, we hold Mr. Johnson's application in abeyance, pending the Supreme Court's decision in <u>Welch</u>.

**APPLICATION HELD IN ABEYANCE.**

16